## SCHUYLKILL COUNTY.

JANUARY TERM, 1882, No. 50.                    APRIL 16, 1883.

# Bright *v.* The Mountain City Banking Company.

1. In a suit by a bank against an accommodation indorser, on a promissory note which the plaintiff had discounted for the maker, the defendant offered to prove that during the time of the running of the note in suit, and the notes of which it was the final renewal, the plaintiff, within three years before suit brought, received usurious interest upon various other notes discounted by the plaintiff for the maker. *Held*, that as to such usurious payments, more than six months prior to the filing of the plea, the evidence was properly rejected, and that it was an offer neither of payment of the note in suit nor of set-off against it.
2. Where a statute authorizes a corporation to invest its capital in notes, and to purchase and hold securities in payment of the debts due it, the discount of notes by it is not *ultra vires*.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. ; PAXSON, J., absent.

Error to the Court of Common Pleas of *Schuylkill County*.

*Assumpsit* October 31, 1873, by The Mountain City Banking Company against Joseph C. Bright to recover on a promissory note on which the defendant was an indorser.

At the trial in the court below, the following facts appeared : The note upon which the suit was brought was dated Philadelphia, May 1, 1873, and was drawn for $4,500 at four months by George J. Richardson to the order of John Lucas & Company.

[Bright *v.* The Mountain City Banking Company.]

It was indorsed:

> "John Lucas & Co.
>   J. C. Bright."

And was protested September 4, 1873.

This note was the last of a series of notes discounted by plaintiff, each for $4,500, made by George J. Richardson to John Lucas & Co., and indorsed by them and Joseph C. Bright. The original note had been renewed every four months until the making of the note in suit. The discount on the note in suit was $221 67. It was admitted that the interest on the original note and its renewals would be $723 75, that the total received by plaintiff was $1,920 11, and that the difference was $1,196 86. The proceeds of the note were paid by plaintiff to Richardson.

Defendant offered to prove "that during the time of the running of the note from December 27, 1870, up to October 14, 1872, during the time the note in suit, and the notes of which it is the final and last renewal were held by the plaintiff, that the plaintiff received from George J. Richardson usurious interest on numerous notes discounted by the bank for Richardson and Lucas & Co., prior indorsers, to the amount of $2,500 and upwards."

The plaintiffs objected.

Defendant added to the offer "that the principal debts of all the notes upon which usurious interest was charged by the bank and which is set up here as a discharge of the liabilities of the defendant have been paid."

The COURT: "The offer was to introduce evidence of a payment of usurious interest by Richardson and Lucas & Co. to this bank upon other notes, other transactions between them than the one in suit. There is no doubt but that Bright, the indorser, can avail himself of any defense which Richardson, the maker, could make if he was sued upon this note and the material question is, what the rights of Richardson would have been which the indorser here can avail himself of. When the other notes spoken of in the offer matured, Richardson had the right to refuse to pay any interest above six per cent. ; if he did pay it, the bank had the right to receive it and violated no law in receiving it. It having been received by the bank, Richardson then had the further legal right to institute a suit, at any time within six months, to recover the excess of six per cent. which he had paid to the bank, or might avail himself of it, as a set-off, if a suit was brought against him by the bank upon other notes.

From the time the borrower pays to the lender interest in excess of six per cent., he becomes a creditor to the lender to that extent. The conclusion we have come to is that Mr. Richardson, after the lapse of six months from the time that he paid this excess of six per cent., could neither sue the bank to recover it back nor avail himself of it as a set-off, and that the statute runs from that time. We think there is authority for this in a recent case : Stephens *v*. Monongahela National Bank, 7 Norris, 157 ; also, refer to Gilmore *v*. Reed, 26 P. F. Smith, 462. We think that what is proposed here may be used as a set-off, but that it must be limited to transactions which occurred within six months prior to the filing of the plea under the decision in Gilmore *v*. Reed." Exception. (First assignment of error.)

The following offer was then made by the defendant :

"It having been shown that J. C. Bright, the defendant, was an accommodation surety only upon the note in suit, and that the plaintiff had knowledge of that fact, the defendant now offers to prove that the following payments of usurious interest in excess of legal rates were paid by George J. Richardson, the maker of the note in suit, to the plaintiff on loans other than the one in suit. (Setting them forth ; the first being January 16, 1871, and the last, October 14, 1871 ; amounting to $2,724 40.) All the loans upon which usurious interest was paid have been paid in full to the plaintiff by George J. Richardson, and before the maturity of the note now in suit. For the purpose of raising the question as to whether the bank was not bound to apply it as between the surety and the principal."

Objected to, and overruled for the same reasons. (Second assignment of error.)

Counsel for defendant offered in evidence the act, April 8, 1870, P. L., 1051, incorporating the Pennsylvania Insurance Company of Pottsville, "with all the rights and privileges, and subject to all the restrictions" in the act to incorporate the Allentown Fire Insurance and Trust Company. (May 4, 1869, P. L., 1253.)

They also offered the latter act, which, in Sec. 4, provides :

"That it shall be lawful for said company to invest its capital, premiums, and profits, on real or personal security, in bonds, notes, mortgages, ground-rents, judgments, stocks and loans of the United States, and State of Pennsylvania, and stocks or loans of any borough, city, or institution incorporated by the laws of this Com-

monwealth, and in other good securities, and to sell, transfer, and change the same, and re-invest the funds of said company when the directors shall deem it expedient ; it shall also be lawful for said company to receive, purchase, or hold any real or personal property, stocks, or other securities in payment of the debts due them, or to secure the same in any manner that the interests of the company may require, or to purchase and hold such real estate as may be necessary to accommodate the said company in the transaction of the business thereof, and to sell, assign, and convey the same in fee-simple or otherwise." This act further provides that the company should be organized and managed according to the provisions of the act of April 2, 1856, and its supplements, except so far as the same is altered, changed, or provided for by this act.

They also offered the act of April 2, 1856, P. L., 213, and its supplement of May 1, 1857, P. L., 380, and the act of April 4, 1872, P. L., 963. The last act changed the name of the Pennsylvania Insurance Company of Pottsville to that of "Mountain City Banking Company" (the plaintiff), and provided, *inter alia,* as follows : "That all insurance privileges of the said company be, and the same are, hereby repealed ; reserving to said company the right to receive deposits and to invest the same agreeable to the provisions of said act, and all the trust and other privileges thereunto belonging ; and that, hereafter, said company and the capital stock thereof shall be subject to such taxation as is now imposed upon banks created under the laws of this Commonwealth, and none other."

Sec. 8, of the act of April 2, 1856 (*supra*), provides : "Any company incorporated under this act shall not have nor exercise the powers of savings or discount institutions."

The act of May 1, 1857 (*supra*), provides that "nothing contained in the ninth section of the act to which this is a supplement shall be so construed as to authorize any company incorporated under the provisions of said act to invest or employ their capital stock, or other moneys, in the purchase of, or discount of, or advance upon promissory notes, bills of exchange, or other negotiable paper."

The defendant then proposed to prove "that the corporation plaintiff never exercised any of the functions of an insurance company ; that no capital stock to create such a company was ever subscribed or paid in ; that the act of Assembly changing the name of this company to the Mountain City Banking Company was not passed

after six months' notice as required by the Constitution to obtain banking privileges; that the indorsement of Joseph C. Bright to the note in suit was obtained under the representation that the note was to be discounted in a bank; that the corporation plaintiff fraudulently represented itself to the public, including George J. Richardson, maker of the note in suit, as a banking institution; that neither the note in suit, nor any of its predecessors representing the same line of discount, was received by the corporation plaintiff other than as a bank possessing banking privileges; and that it was discounted by them at a usurious rate of interest under the pretense by said corporation plaintiff that it possessed discounting privileges; that this corporation held itself out to the public only as a bank, doing banking business only; that the note in suit and all of its predecessors representing the same original note were received by this corporation only as a banking institution, and not otherwise; that the capital stock and other moneys of the corporation were used exclusively in the discount of promissory notes and other commercial paper; and that this note and its predecessors were received in the same manner."

The plaintiff objected.

The COURT: "Under the authorities, we are constrained to the ·conclusion that the defendant in this case cannot raise the question which is attempted in this offer, and we will overrule it." Exception. (Third assignment of error.)

December 9, 1880, verdict for the plaintiff for $4,508 60.

The defendant made a motion for a new trial, and in arrest of judgment, which the Court, PERSHING, P. J., overruled, filing the following opinion:

"Upon the trial of this case the defendant offered to prove the payment by George J. Richardson, the maker of the note in suit, on which defendant was indorser, of usurious interest on other notes which had no connection whatever with the note in suit. It was made a part of this offer 'that the principal debts of all the notes upon which usurious interest was charged by the bank, and which is set up here as a discharge of the liabilities of the defendant, have been paid.'

The judge who tried the cause admitted the offer, but limited it to transactions which took place within six months of the filing of the plea. This ruling is the first ground of complaint discussed in the elaborate printed argument of the defendant.

The statute regulating interest declares that 'in all

[Bright *v*. The Mountain City Banking Company.]

cases where any borrower or debtor shall heretofore or hereafter have voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate, no action to recover back any such excess shall be sustained in any Court of this Commonwealth, unless the same shall have been commenced within six months from and after the time of such payment.' This is a statute of limitation which bound Richardson in his dealings with the bank. His right of action accrued the very moment the usury was paid. At the end of six months it was effectually barred.

Thereafter he could neither sue for it nor set it up by way of defense as a set-off or cross-demand. When, therefore, the Court gave Bright the same legal status in reference to these other transactions with the bank that Richardson might have claimed, we gave him every advantage he could legally demand.

The Court to sustain its ruling relied upon Gilmore *v*. Reed, 26 Smith, 462, and Stephens *v*. Monongahela National Bank, 7 Norris, 157. In Reed *v*. Marshall, 9 Norris, 345, Justice Sterrett said : ' In actions at law, the bar of the statute is equally applicable to the defendant's cross-demands as to the plaintiff's claim, and there is no good reason why it should not be so. Set-off is in the nature of cross-action, optional with the defendant, and the statute runs against it until pleaded ; and so completely is it in the control of the defendant that even when pleaded it may be withdrawn : Gilmore *v*. Smith, 26 Smith, 462.'

Maher's Appeal, 10 Norris, 516, is a case in point. There a single judgment was given to secure the payment of two separate notes made to the same party. In the renewal of these notes usurious interest was charged. One of them was paid about six months before the real estate of the debtor was sold at sheriff's sale. On the distribution it was claimed that the holder of these notes should have deducted the excess of interest over six per cent. he had received on the note that had been paid. In deciding that this could not be done, the Supreme Court said : ' It appeared, however, that the first note was paid more than six months before the sheriff's sale, from which the fund for distribution was realized, and hence the defendant was not in a position either to sue for or set off the excess of interest paid on that note. . . . . The debt, evidenced by the note which was paid, was extinguished, and the time had gone by for the defendant to either sue for the excess of interest paid on it, or to set-off the same against the outstanding note.'

We see no error in the ruling of the Court on this branch of the case.

The defendant, as a further defense, set up 'a statutory prohibition upon the plaintiff to acquire the note in suit, and, consequently,. an inability to enforce it.' This raised a question which, in the mind of the judge who tried the case, was not free from doubt. The plaintiff was originally chartered as an insurance company. A supplement passed April 4, 1872, (P. L. 963,) changed its name to the Mountain City Banking Company, repealed all its insurance privileges, reserving to it the right to receive deposits and to invest the same agreeably to the original act of the corporation. This supplement also made the said company and the capital stock thereof thereafter subject to such taxation as was imposed upon banks. The original act made it lawful for said company to invest its capital, premiums and profits on real or personal security in bonds, notes, mortgages, ground-rents, judgments, loans, stocks and in other good securities, and to sell, transfer, and change the same, and re-invest the funds of said company when the directors shall deem it expedient, etc. Without stopping to discuss the bearing it may have on the question before us, we mention, as a fact, that this supplement of 1872 was passed fifteen years after the supplement of May 1, 1857, (P. L. 380,) to the act regulating insurance companies, which prohibited such companies from dealing in promissory notes, bills of exchange or other negotiable paper. The defendant on this point has called our attention to numerous cases decided in this and other States. It would be a useless expenditure of labor to undertake to reconcile them by any established rule. Some of the most important of these were before the Supreme Court in the argument in Stephens *v.* Nat. Bank, *supra*, and again in Youngsfleisch's Ap., Schl. Leg. Record, 76, of the first series under the date of April 10, 1879.

That the plaintiff is a corporation, and that the defendant dealt with it as a corporation, are undisputed facts. As a corporation it received moneys on deposit, and on the credit of the defendant, as an indorser for Richardson, the note to which they are parties was taken by the bank. One who has borrowed money from a bank cannot, after he has thus received the benefit of the contract, repudiate the obligation which it imposes on himself, upon the ground that the bank making the loan exceeded its corporate powers, or acted otherwise improperly or illegally, neither on the ground of any original informal-

ity or irregularity in the formation of the company under the law of its corporate existence :    Morse on Banking, 15 ; Parrish v. Wheeler, 2 N. Y. R., 494.    Neither party can avoid the contract though *ultra vires*, after enjoying its benefits.    Neither can a borrower say 'I will not return you this money, because you had no power in your charter to lend it.'    Field on Corp., Sec. 265, 267. Steam Nav. Co. v. Weed, 17 Barb, 278.    Bank v. Bank, 11 Barb, 213.

In Spahr v. Farmers' Bank, 9 W. N. C., 433, every question now before us, as will be seen by reference to the paper books, was raised and argued at length.    The suit there was against an accommodation indorser, and the facts were much like those in the case in hand. That case decides that where there is a *de facto* corporation, and the State does not interfere, its corporate existence and its ability to contract cannot be questioned in a suit brought upon an evidence of a debt given to it by one who has dealt with it in its corporate character.    As against him, the charter and a use of rights claimed to have been conferred by it to the defendant are sufficient. Although a charter may be declared null and void by the proper authority, yet the violation thereof cannot be determined in a collateral suit ; citing Commissioners v. Bolles, 4 Otto, 104 ; Irvine v. Lumberman's Bank, 2 W. & S., 190.

The charter of the Mountain City Banking Company has already undergone the scrutiny of the Supreme Court in Youngsfleisch's Appeal, *supra*.    In a *per curiam* opinion the Court said in affirming the ruling of this Court, 'We think the charter of the company authorized them to purchase notes as an investment, and conceding this was a discounting privilege, the presumption must be that the forms prescribed by the Constitution to be pursued before the creation of such a corporation by the Legislature have been pursued.    Whether in a collateral proceeding like this such a presumption is not conclusive it is unnecessary in this case to determine.' Whatever may have been decided by the courts in other States, we think the decisions of our own Supreme Court settle the controverted questions raised in this case against the position of the defendant."

Judgment was thereupon entered for the plaintiff.

The defendant then took this writ, assigning for error the action of the Court in overruling his various offers of evidence, as above.

*C. W. Wells* and *Hughes* & *Farquhar* for plaintiff in error.

All usury as well since the interest act of 1858, as before *eo instante* it is paid, is money held to the use of the payor by the payee for which an action will lie. Because such action lies by the payor against the payee for this usury, and because the payor at the same time owes a debt of at least equal amount (*i. e.* the principal debt) the law credits the one upon the other, reducing the real debt *pro tanto*. In this way each successive payment of usury so reduces the principal debt that when the debtor comes to pay his debt, if he pays the nominal principal debt in full he overpays to his creditor such an amount in excess of his real debt as equals the whole of the usury theretofore paid. This overplus, whether we call it excess of interest or excess of principal, is also the money of the payor, which he may sue for and recover from the payee, or if the payor owes at the same time to the payee another debt, the law will, by precisely the same process and for the same reason as before credit that excess to the payment *pro tanto* of that other debt. Therefore the limitation (six months) does not apply in a case such as this, where the other debt is due at the same time as the usury becomes suable, the parties being in precisely the same situation where there are two debts or where there is but one : Thomas *v.* Shoemaker, 6 W. and S., 183 ; Duquesne Bank's Appeal, 24 Smith, 426 ; Campbell *v.* Sloan, 12 Smith, 481 ; Lucas *v.* Government National Bank, 28 Smith, 232.

The Mountain City Banking Company is subject to the general insurance act of 1856 and 1857, and was expressly prohibited from discounting. There is a wide distinction between things merely *ultra vires* the corporation and things which the corporation is expressly prohibited from doing. The first may be frequently inforced, but the latter never : Whitney Arms Co. *v.* Barlow, 63 N. Y., 62 ; Shrewsbury *v.* R. R. Co., 1 Law Report, Eq., 593 ; Oil Creek R. R. Co *v.* Penn'a Trans. Co., 83 Penn., 160 ; Farnham *v.* Canal Co., 61 Penn'a State, 265.

The act of 1801 provides that no foreign bank shall be permitted to establish in this State any banking house or office of discount, under penalty. The Supreme Court held no action could be maintained on the note : Young *v.* Robertson, 6 Phila., 184 ; Burkholder *v.* Beetam, 65 Penn., 500 ; Morris Run Coal Co. *v.* Barclay Coal Co., 18

[Bright v. The Mountain City Banking Company.]

P. F. Smith, 173; Yundt v. Robert, 5 S. & R., 139; Holt v. Green, 23 P. F. Smith, 198.

The receipt of the money for usurious interest *ipso facto* operates as a payment of any debt due the creditor by the debtor when accounts are mutual and concur, but the statute does not bar either until both are barred.

We claim here the right to set up the possession by plaintiff, of the money of the principal, during the existence of the suretyship, and this whether the plaintiff still retains that money, whether he has paid it over to the debtor, or whether the debtor's right of action against the plaintiff for that money is barred by the statute of limitations, or not.

It is clear doctrine that if a creditor have the means or the power of satisfaction in his hands out of the property of the principal debtor and do not avail himself of it, the surety is discharged *pro tanto*. If authority be needed, we cite Commonwealth v. Vanderslice, 8 S. & R., 457; S. C., 16 S. & R., 252; Ramsey v. Bank, 2 P. & W., 203: Kuhns v. Bank, 2 Watts, 136; Klopp v. Lebanon Bank, 46 Penn., 88; Cathcart's Appeal, 1 Harris, 420; Bank of Gettysburg v. Thompson, 3 Grant, 114; Lichtenthaler v. Thompson, 13 S. & R., 157.

The irresistible conclusion upon this branch of the case is that Bright, as a surety, had a right to set up as an equitable defense, the possession by the bank of the money of the principal debtor, paid to the bank for usurious interest during the existence of the debt in suit, although upon different transactions and although the principal debtor might be barred by the statute from setting up the usury as a set-off.

*I. W. Price, C. Little* and *James Ryan* for the defendant in error.

The usury act of 1858 contemplates contracts for a greater rate than six per cent., and such contracts are permitted and until avoided by the borrower or debtor, by the exercise of his option to avoid it, the contract is complete and inforceable. This if true as between the parties and until the debtor exercises his option to avoid the contract, the excess of interest is as much the property of the lender as the six per cent. That act is limited to parties: Miners' Trust Company v. Roseberry, 31 Smith, 312; Bly. v. Bank of Titusville, 29 Smith, 453; Overholt v. Bank of Mt. Pleasant, 1 Norris, 490; Maher's Appeal, 10 Norris, 516; Gilmore v. Reed, 26 Smith, 462.

The whole theory of plaintiff in error is predicated on

[Bright *v.* The Mountain City Banking Company.]

the proposition that mutual debts, *per se,* extinguish each other by operation of law.

In Post *v.* Carmalt, 2 W. & S., 70, the rule is laid down that mutual debts do not, *per se,* extinguish each other ; to effect such extinguishment there must be some act of the parties, whilst debtor and creditor, by which they determine that one shall go in satisfaction of the other ; which act must be of binding efficacy so as to accompany the claims into whosesoever hands they may pass; Carmalt *v.* Post, 8 Watts, 406 ; Hinckley *v.* Walters, 9 Watts, 179.

In Himes *v.* Barnitz, 8 Watts, 39, this court held, The Mountain City Banking Company is not prevented from carrying on a banking business because section 4 of the act in accordance with which it was organized provides expressly for such a business, and avoids so far the provisions of the general insurance law : Spahr *v.* Bank. 9 W. N. C., 433. Cochran *v.* Arnold, 8 P. F. Smith, 399.

The plaintiff in error dealt with the corporation as such and is estopped from denying its corporate existence : Cochran *v.* Arnold, 8 Smith, 399 ; Cong. So. C. *v.* Perry, 6 N. H. 164 ; Dutchess Mfg. Co. *v.* Davis, 14 Johns, 238 ; Angell *v.* Ames on Corp., § 94 ; Bigelow on Estoppee, 425, and note 4.

MAY 7, 1883.—PER CURIAM : The evidence offered was rightly rejected. The claim was neither evidence of payment on the note in suit nor of set-off against it. It arose out of a separate transaction, and the claim was barred by the statute of limitations. The taking of the note by the bank was not *ultra vires.* The express authority given to invest its capital in notes and to purchase and hold securities in payment of the debts due it permitted this note to be taken. We discover no error in the record.

Judgment affirmed.